UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CAROL T. DEAN                                    CIVIL ACTION NO. 12-2934

VERSUS                                           JUDGE S. MAURICE HICKS, JR

STATE OF LOUISIANA                               MAGISTRATE JUDGE PAYNE

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment filed by the defendant, The
State of Louisiana, through the Department of Children and Family Services ("the
Department"/ "DCFS") (Record Document 32).   Defendant contends it is entitled to
summary judgment because there is no genuine dispute of material fact regarding whether
the plaintiff received a reasonable accommodation.   Plaintiff opposes this motion,
contending that she never received an agreed upon accommodation as required by the
ADAAA.

For the following reasons, the Court hereby **DENIES** defendant's Motion for
Summary Judgment (Record Document 32).

**BACKGROUND**

The following factual background is drawn from the statement of facts contained in
Defendant's Motion for Summary Judgment.   Most of these facts are uncontested.   Any
contested facts are cited to the original document in the record.  Plaintiff, Carol Dean, filed
this action for damages pursuant to the Americans with Disabilities Act as amended by

Americans with Disabilities Amendments Act of 2008 (ADAAA), 42 U.S.C.A. §12101, complaining of major discrimination based upon disability in employment by constructive discharge and failure to provide timely and reasonable accommodations.  Ms. Dean was employed by the Louisiana Department of Social Services (currently titled the Louisiana Department of Children and Family Services) beginning in December of 2001.  (Record Document 32-1).  Ms. Dean had problems with trigger finger syndrome on both hands as well as carpal tunnel syndrome on the right hand.  During February of 2010, Ms. Dean had surgery for her trigger finger syndrome.  Following the surgery, Ms. Dean returned to work with no limitations in March 2010.  A second surgery was scheduled to address both the carpal tunnel syndrome and trigger finger on her right hand for June 2, 2010.  Ms. Dean informed her supervisor, Larry Barbee, that she needed FMLA leave beginning on June 1, 2010 for her surgery.  The forms were completed for FMLA and the leave was approved.  The procedures were postponed and performed on June 11, 2010.  Ms. Dean returned to see her doctor, Dr. Ritter, on June 22, 2010, and was provided with a Work Restriction Form completed by the doctor's office.  The Work Restriction Form contained a work limitation from July 12, 2010 until August 25, 2010, limiting her to an ergonomic work station and a vertical mouse.  It also contained a recommendation that "Voice recognition system (e.g. Dragon Speaking) would be beneficial" and to limit typing to 4 hours daily, up to 2 hours at a time.

Soon after the June 22, 2010 Work Restriction Form was presented to Mr. Barbee, a meeting was held between Ms. Dean, Mr. Barbee and James Goudeau, the Programs Operations Manager for the Bossier Parish Child Welfare Office.  The meeting was held to discuss Ms. Dean returning to work, and Mr. Goudeau was provided with a copy of the

Work Restriction Form.  There was discussion about whether Ms. Dean could be provided this accommodation but that she could not return to work on limited duty.  In her deposition, Ms. Dean stated that Mr. Goudeau said he did not have to provide any "accommodation," and that she couldn't return to work on limited duty. Ms. Dean did acknowledge in her deposition that by the end of the meeting, Mr. Goudeau stated the requested accommodations would be submitted to the regional office and HR would make the decision.  Ms. Dean contests this fact, stating that when she met with Mr. Goudeau on July 14, 2010, she was told that he would not forward the recommendations of her doctor because they were not in the form of a prescription.  (Record Document 41-2, Exhibit A-2 at page 85:15-19).

Ms. Dean had a follow up appointment with Dr. Ritter on August 10, 2010, and was provided with a second Work Restriction Form, requesting she use a vertical mouse, ergonomic work station, and voice recognition software.  After speaking with her supervisor, Mr. Barbee, she was informed that her FMLA leave had been extended to November 10, 2010.

On August 11, 2010, the work restriction form was apparently scanned on the DSS/DCFS computer system and sent via email to Hope Davis, HR analyst.  Ms. Davis sent an email response that she was working with IT on the voice recognition device, but had not heard anything back from them.  According to Ms. Davis, no request for accommodation was denied, unless there was a very high cost and the expense was unreasonable.  The Dragon Speak program would have cost $173.20 and, therefore, it would have been approved.  On September 28, 2010, Hope Davis sent an email to Connie Wagner, deputy assistant secretary of field services, who was one of the people

responsible for approving expenditures for pending ADA accommodations.  Ms. Wagner responded that Ms. Davis needed to contact Denise Fair for approval.  It is not clear whether Ms. Davis made this request, although she stated that she didn't remember but would have done it because she was told to do so.

On October 1, 2010, Ms. Davis left to work as the Human Resources Director of a different state agency.  Debra Wilson filled Ms. Davis's position in the HR department beginning on October 18, 2010.  On October 29, 2010, Debra Wilson emailed Connie Wagner to follow up on Hope Davis's request for approval to purchase Dragon Speak, and Ms. Wagner replied that it was her understanding that Denise approved the purchase.

Ms. Dean visited Dr. Ritter on November 9, 2010 and got a revised work restriction, limiting her "typing to 4 hours daily until FCE has been completed."  Also on November 9, 2010, Ms. Wilson sent an email to Larry Barbee asking if the Dragon Speak software had been received.  Mr. Barbee forwarded the email to Mr. Goudeau.  After receiving the email, Mr. Goudeau forwarded the email to the DCFS User Support Center asking if the help desk had received the item.  The Support Center replied that there was no ticket number for the request on Ms. Dean.

On November 12, 2010, Ms. Dean contacted someone within the Department asking about the requested equipment and her leave status.  Mr. Goudeau informed Ms. Dean that her sick leave was almost depleted and she would be terminated if she did not return when her sick leave was exhausted.  Ms. Dean has asserted that it is inaccurate that she did not return to work because no accommodation was being provided for her return to work.  (Record Document 41-2, Exhibit A-1, No. 11& 13).  On November 19, 2010, Ms. Dean called Baton Rouge and spoke with Shelly Johnson about transferring her sick leave to

annual.  Ms. Dean received a phone call a few days later and was told her annual leave in lieu of sick leave had been approved, permitting Ms. Dean to remain on leave until approximately December 8, 2010.  On November 30, 2010, Mr. Goudeau received a call from Mr. Barbee stating that Ms. Dean had called and told him that she had decided to retire.  Mr. Barbee requested the billing code for the Dragon Naturally Speaking for Ms. Dean on December 6, 2010, the same day Ms. Dean signed an application for retirement. Ms. Dean continued to work from December 8 through the end of January, 2011, with her effective retirement date February 18, 2011.  Ms. Dean alleges her employer failed to provide a reasonable accommodation, giving her no choice but to retire.  (Record Document 1 at 16).

## LAW AND ANALYSIS

### I.    Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c);  New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); see also,

Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be

sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996).  If the nonmovant can not meet this burden, then "the motion for summary judgment must be granted."  Id., Little, 37 F.3d at 1076.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential.  Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.


**II.      42 U.S.C. § 12112(b)(5)**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id. at § 12112(b)(5)(A). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. at § 12111(8). "Reasonable accommodation" may include "job restructuring, part-time or modified work schedules...." Id. at § 12111(9)(B). The "undue hardship" analysis requires courts to consider factors including "the nature and cost of the accommodation;" the size of the facility and the

business entity involved in terms of financial resources, personnel, and geography; and the type of operations including composition, structure, and function. Id. at §12111(10)(B).

"Once an employee makes a request for reasonable accommodations, the employer is obligated by law to engage in an 'interactive process' or 'a meaningful dialogue with the employee to find the best means of accommodating that disability." Tribble v. Ouachita Parish Police Jury, 939 F.Supp.2d 626, 632, 2013 WL 1411810, at *5 (W.D.La.2013)(citing E.E.O.C. v. Chevron Phillips Chem. Co., 570 F. 3d 606, 621 (5th Cir. 2009)).  In order to prove a claim of discrimination under the ADA, a plaintiff must satisfy the elements of 42 U.S.C. §12112(b)(5):

(1) She had a disability;

(2) She was qualified for the job;

(3) Her employer knew of the disability;

(4) She requested an accommodation;

(5) A reasonable accommodation existed that would have allowed her to perform the essential functions of the job;

(6) Her employer failed to provide a reasonable accommodation.

42 U.S.C. § 12112(b)(5)(A); Heard v. United Parcel Service, Inc., No. 09–1950, 2012 WL 399213, at *8 (W.D.LA. Feb. 7, 2012); Riel v. Elec. Data Sys. Corp., 99 F. 3d 678, 683 (5th Cir. 1996); Burch v. Coca-Cola Co., 199 F. 3d 305, 315 (5th Cir. 1997).

The parties are in agreement that Ms. Dean satisfies elements (1)-(5), however there is a disagreement as to whether element (6) has been satisfied.  It is the employee's burden, generally, to make his need for an accommodation known to his employer. Cutrera v. Bd. of Sup'rs of Louisiana State Univ., 429 F.3d 108, 112 (5th Cir. 2005).  Under the

ADA, reasonable accommodations may include the following "...job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices...and other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9).   The plaintiff "bears the initial burden of proof on the issue of reasonableness..."  Windhauser v. Bd. of Supervisors, for LSU A&M, 360 Fed. Appx. 562, 567 (5th Cir. 2010) (unpublished in F.3d).

Ms. Dean's position is that "Mr. Goudeau refused her any accommodation and told her he did not have to provide her with any of the items recommended by her doctor", however, "she admits that he told her he and Mr. Barbee did not make decisions regarding accommodations, and that her request would be sent to HR in Baton Rouge" (Record Document 32-1).  In her Opposition to the Motion for Summary Judgment, Ms. Dean states that "there is not any genuine dispute that the State of Louisiana never provided the accommodation to permit Mrs. Dean's return to work."  (Record Document 41).  The State of Louisiana has taken the position that "[T]he evidence establishes that defendant never denied Ms. Dean's request for a reasonable accommodation.  Although the approval of the request was delayed [perhaps for an unreasonable amount of time] for a reason(s) that is not apparent from the records available regarding the processing of the request, the evidence shows that the accommodations were ultimately approved."  Id.

A decision regarding whether Ms. Dean was discriminated against cannot take place without knowing whether the State failed to provide the accommodation to permit Ms. Dean to return to work in a timely fashion.  The facts set forth establish that Ms. Dean made her request for an accommodation before August 11, 2010, when the Work Restriction Form

was submitted to Hope Davis.  Discussions between Ms. Dean and a number of employees of the State took place over the next few months.  The facts indicate that on November 30, 2010, Mr. Goudeau received a call from Ms. Dean indicating that she had decided to retire. As of this date, the State had not obtained the readily available Dragon Speak software. Mr. Barbee requested a billing code for the Dragon Speak on December 6, 2010, indicating that the State was trying to provide the accommodation.  Ultimately Ms. Dean retired on February 18, 2011.  It is unclear from the record whether the accommodation would have been provided had Ms. Dean not retired.

There is a genuine dispute of material fact with regards to whether the accommodation was  provided to Ms. Dean by the State, and/or whether the delay in granting  the accommodation was untimely.  No legitimate reason has been identified to date as to why there was a failure to provide the accommodation; however, the issue of untimeliness is one for the jury to decide. For this reason, summary judgment is not appropriate at this time.

## CONCLUSION

The Court finds that there is a genuine dispute of material fact as to whether the accommodation sought by Plaintiff and approved by the state was untimely, thus forcing Plaintiff's retirement.   Therefore, summary judgment in favor of the defendant is not appropriate as a matter of fact and law.

Accordingly:

**IT IS ORDERED** that the Motion for Summary Judgment of defendant, the State of Louisiana, through the Department of Children and Family Services ("the Department"

"DCFS") (Record Document 32) shall be **DENIED.**

      **THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 23rd day of  January, 2015.

                                    _____

                                      S. MAURICE HICKS, JR.
                              UNITED STATES DISTRICT JUDGE